The undersigned have reviewed the Award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Based upon the competent, credible, and convincing evidence adduced at the initial hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is a right-handed, 23 year old male.
2. At the time of the involved injury, he had been employed about a week as a painter by defendant Esquiel Toledo, d/b/a Toledo Paint Company, who owned and operated a paint contracting business. In this job he earned an average weekly wage of $397.50 based on the 55 to 60 hours that he was scheduled to work and his $6.00 hourly rate.
3. Co-defendant Fortis Homes is a general contractor that was then involved in constructing homes in a subdivision on Fleming Road in Greensboro. Fortis had sublet the painting work on the houses that it was constructing in the same neighborhood to not only Esquiel Toledo, but also Jose Salazar, who was another painting contractor and had the actual subcontract to paint the particular residence on Lot 19 in the subdivision Fortis Homes was constructing in the Fleming Road neighborhood.
4. At approximately 5:00 p. m. on April 18, 1994, plaintiff and another of Esquiel Toledo's employees, who was driving the van, were leaving the Fleming Road neighborhood area where Fortis Homes had a number of homes under construction. This was at the end of the regular work day. One of Fortis' assistant project managers, Mitch Powell, stopped their van and asked them to begin painting the garage to the house on Lot 19 that Fortis was constructing in the same neighborhood. This was because painting on the garage had to have begun prior to the arrival of an appraiser that afternoon in order for Fortis to qualify for a loan and because the painting subcontractor that had subcontracted to paint the particular residence, Jose Salazar, was working in another subdivision and not available.
5. Although Mr. Powell did not recognize them as employees of Esquiel Toledo, he knew both were painters and that Esquiel Toledo had subcontracting painting jobs from his employer in the same neighborhood.
6. At the request of the general contractor for whom their employer was painting other homes in the same neighborhood, plaintiff and his co-employee stopped and began to paint the garage of the house on Lot 19 Fortis Homes was building.
7. In the process of painting the same garage plaintiff fell off a ladder and suffered the disabling left wrist fracture that occurred under admittedly compensable circumstances. This injury arose out of and in the course of his employment by Esquiel Toledo, d/b/a Toledo Paint Company because he was assisting the general contractor for whom his employer had contracted to paint other houses in the same neighborhood. The ultimate result of his assisting the general contractor would have been to benefit his employer, who already had a contract to paint other houses for Fortis Homes and the prospect painting more in the future, and plaintiff had reasonable grounds for believing so due to their related business interests.
8. After initially being treated by physicians at Urgent Medical Care Center, plaintiff came under the care of an orthopedic surgeon, Dr. Robert A. Wainer, who provided a conservative course of treatment. The doctor ultimately referred plaintiff to a hand specialist, Dr. Gary Kuzma, in February of 1995, because of his continued hand problems. Dr. Kuzma similarly provided a conservative course of treatment, including putting plaintiff's injured left wrist back in a cast during the period from March 14, 1995 to April 12, 1995.
9. As a result of his left hand injury, plaintiff was totally incapacitated from working during the periods from April 19, 1994 to November 20, 1994 and thereafter from March 14, 1995 to April 12, 1995.
10. By the time Dr. Kuzma rated him for permanent partial disability on December 5, 1995 — if not well before, plaintiff had reached maximum medical improvement and/or the end of the healing period from and following the injury by accident giving rise hereto, at which time he retained a five percent permanent partial disability of the left hand as a result of the same injury.
* * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission make the following
CONCLUSIONS OF LAW
1. On April 18, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant Esquiel Toledo, d/b/a Toledo Paint Company, resulting in a fracture of his left wrist. G.S. § 97-26. Guest v. Brenner Ironand Metal Co., 241 N.C. 448, 85 S.E.2d 596 (1955). Lewis v.Kentucky Century Life Insurance Co., 20 N.C. App. 247,201 S.E.2d 228 (1973). Larson on Workers' Compensation, Section 27.20.
2. As a result of the injury by accident giving rise hereto, plaintiff was temporarily total disabled from April 19, 1994 to November 20, 1994 and thereafter from March 14, 1995 to April 12, 1995 entitling him to compensation at a rate of $265.01 per week during the same periods. G.S. § 97-29.
3. As a result of the injury by accident giving rise hereto plaintiff retains a five percent permanent partial disability of the left hand entitling him to ten weeks of compensation at a rate of $265.01 per week commencing as of December 4, 1995, when Dr. Kuzma rated him for a permanent partial disability and by which time he had reached maximum medical improvement and/or the end of the healing period from and following the same injury. G.S. § 97-31 (12).
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendant Esquiel Toledo, d/b/a Toledo Paint Company and its carrier, Aetna Casualty Surety Company, shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $265.01 per week during the periods from April 19, 1994 to November 20, 1994 and thereafter from March 14, 1995 to April 12, 1995, as well as an additional ten weeks of compensation at the same rate on account of his five percent permanent partial disability of the left hand commencing as of December 4, 1995, when Dr. Kuzma rated him for permanent partial disability. By this date he had reached maximum medical improvement and/or the end of the healing period from the involved wrist injury. Such compensation, having accrued, the same shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same benefits and forwarded directly thereto.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants Esquiel Toledo, d/b/a Toledo Paint Company and its carrier, Aetna Casualty Surety Company, shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same are submitted in accordance with the Industrial Commission rules.
4. Defendants Esquiel Toledo, d/b/a Toledo Paint Company and its carrier, Aetna Casualty Surety Company, shall bear the costs.
5. IT IS FURTHER ORDERED that defendants Fortis Homes and its carrier, Maryland Casualty Company, shall be DISMISSED with prejudice as parties.
This case is HEREBY REMOVED from the Full Commission hearing docket.
This the ________ day of _______________, 1997.
 S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/kws